```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/9/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHRISTIAN HINRICHSEN,

                        Plaintiff,

          -v-

THE HINRICHSEN FOUNDATION,

                        Defendant.

------------------------------------------------------------X

17 Civ. 1152 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case arises from the alleged breach of a 2009 contract, which contemplated the merger of four entities, one a New York corporation, into a larger corporation based overseas. Before the Court is a motion by defendant Hinrichsen Foundation (the "Foundation") to dismiss the complaint of plaintiff Christian Hinrichsen, on three separate grounds: (1) lack of personal jurisdiction, (2) forum *non conveniens*, and (3) failure to state a claim. For the reasons that follow, the Court dismisses the Complaint for lack of personal jurisdiction over the Foundation without addressing the Foundation's alternate grounds for dismissal.

## I.  Background[1]

The contract dispute here has its roots in a family tragedy. The forbearers of plaintiff Christian Hinrichsen ("Christian"), the Hinrichsen family, were subject to persecution in Nazi

---

[1] The Court's account of the underlying facts of this case is drawn from plaintiff's complaint, Dkt. 1 ("Compl."), as well as both parties' submissions regarding the instant motion, including the Declaration of Timothy Berg and exhibits thereto, Dkt. 10 ("Berg Decl."). The Court accepts as true all factual allegations in the Complaint, drawing all reasonable inferences in plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

1

Germany in the 1930s. Compl. at 3. Two of Christian's ancestors were murdered at Auschwitz and a third died in an internment camp. *Id.*

Relevant here, in 1939, C.F. Peters GmbH & Co., KG ("Peters Germany"), a corporate entity owned by the family, was subject to a forced sale as part of the Third Reich's "Aryanization" program. *Id.* In 1942, one of Christian's ancestors was able to "re-engage" with Peters Germany and apparently retook some or all ownership of the company. *Id.* at 4. Two other Hinrichsen entities were founded by family members who emigrated from Germany to New York and London: Peters Edition Ltd. ("Peters London"), and C.F. Peters Corporation ("Peters New York"). *Id.* at 3–4. The three above-identified "Peters" entities are central to the dispute here, along with a fourth, Edition Peters GmbH ("Peters GmbH"), whose provenance the pleadings leave unclear.

Before November 17, 2009, the interests in the various Peters entities were held as follows. Peters Germany was jointly owned by (1) Henry Hinrichsen ("Henry"), Christian's father, (2) Martha Hinrichsen ("Martha"), Christian's aunt, (3) the Foundation, and (4) others. Compl. Ex. 1 ("2009 Agreement") at 1. Shares of Peters GmbH were also jointly held by Henry, Martha, and the Foundation. *Id.* The capital-issued shares of Peters New York were wholly owned by Henry and Martha. *Id.* Peters London was wholly owned by the Foundation. *Id.* As to residences of the owners, Henry was a resident of Vermont, *id.*, Martha was a resident of Connecticut, *id.*, and the Foundation is a British entity headquartered in London, *see* Compl. at 2; Berg Decl. at 1.

On November 17, 2009, Henry, Martha, Peters London, and the Foundation entered into a written agreement that contemplated the creation, by means of a re-organization and merger, of yet a new Peters entity. Compl. at 4. The agreement ("2009 Agreement") referred to the new

2

entity, for the purposes of the agreement only, as "Newco." The 2009 Agreement provided that Henry, Martha, and the Foundation would transfer all of their interest in the four Peters entities—two of which were Frankfurt-based, one of which was London-based, and one of which was New York-based—to Newco. The new entity would ultimately take the form either of Peters London or a "new group company to be formed (under whatever name) to implement this agreement." 2009 Agreement at 1.

Under the 2009 Agreement, Henry and Martha would each receive 15% of the new entity's capital shares. 2009 Agreement at 2. The Foundation would receive 70%. *Id.* at 3. In addition, under the 2009 Agreement, Henry and Martha agreed to enter into an arrangement in which each would receive annual compensation in return for providing consultancy services to Peters New York or any successor in interest. *Id.* at 2. Further, in the event of Henry's death within 10 years of the completion of the transaction, the 2009 Agreement further provided that Christian would either be appointed as a consultant by the newly formed entity or receive, from the Foundation, 5 percent of the new entity's then-issued equity. *Id.* at 3.

On July 1, 2010, Peters New York and Henry entered into a written consulting agreement, as contemplated by the 2009 Agreement.[2] *See* Berg Decl. Ex. G ("2010 Consulting Agreement"). The 2010 Consulting Agreement provided that, if Henry died within 10 years of the agreement, Peters New York would retain Christian for a term of the lesser of "the period of three (3) years from the date of [Henry's] death or . . . the period of time between the date of [Henry's] death and January 1, 2020." 2010 Consulting Agreement at 2. The 2010 Consulting Agreement, however, did not refer to the alternative option described in the 2009 Agreement in

---

[2] The parties have not supplied a written consulting agreement for Martha.

3

which Christian would receive, in lieu of a paid consultancy at Peters New York, a five percent interest in the new entity from the Foundation.

In August 2010, consistent with the 2009 Agreement, Henry, Martha, Peters London, Peters GmbH, and the Foundation executed a partnership agreement ("2010 Agreement") and formed a new entity, C.F. Peters, Ltd & Co. KG ("Peters KG"). Compl. at 5; Berg Decl. Ex. F ("2010 Agreement") at 1, 12. The company had three limited partners (the Foundation, Henry, and Martha), and three personally liable partners. 2010 Agreement at 2. Relevant here, the 2010 Agreement did not mention Peters New York, or Henry and Martha's consulting agreement with Peters New York. The 2010 Agreement instead stated that:

> This Agreement replaces all previous partnership agreements between the parties. The agreement between the Hinrichsen Foundation, Martha and Henry Hinrichsen and Peters Edition Ltd, London dated November 17, 2009 remains in principle in place unless this agreement deviates from it; in this case the provisions of this agreement shall prevail.

*Id.* at 10. The 2010 Agreement further provided that "German law shall apply to this agreement and its interpretation." *Id.* As to dispute resolution, it provided that "[i]f there is any dispute or controversy between the partners arising out of or relating to this agreement, the parties agree that such dispute or controversy shall be arbitrated in accordance with the Arbitration Rules of the German Institution of Arbitration . . . [and that the] Venue of Arbitration shall be Berlin." *Id.*

On September 7, 2011, Henry, Martha, and the Foundation amended the 2010 Agreement ("2011 Agreement"). The amended agreement did not change any terms relevant here. *See* Compl. Ex. 2 ("2011 Agreement").

On February 25, 2016, Henry passed away. Compl. at 5. Pursuant to the 2009 Agreement, Christian made a timely request for the transfer to him, from the Foundation, of five percent of the equity of the new entity. *Id.* at 6. The Foundation declined to do so. It took the

4

position that, in the 2010 Consulting Agreement, the parties had decided to eliminate the equity transfer option described in the 2009 Agreement. *Id.* This lawsuit, in which Christian seeks as relief the transfer of the five percent of the equity to himself, followed.

## II. Procedural Background

On February 15, 2017, Christian filed a complaint, alleging that the Foundation had breached the 2009 Agreement by refusing to transfer five percent equity in the new entity to him. Dkt. 1.

On June 16, 2017, the Foundation filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), for *forum non conveniens* under Rule 12(b)(3), and for failure to state a claim under Rule 12(b)(6), Dkt. 8, and a supporting memorandum, Dkt. 9 (collectively, "MTD"). On July 12, 2017, Christian filed a memorandum in opposition. Dkt. 13 ("Pl's Opp."). On August 3, 2017, the Foundation filed a reply. Dkt. 19 ("Def's Repl. Mem.").

## III. The Motion to Dismiss for Lack of Personal Jurisdiction

### A. Applicable Legal Standards

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a

full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Nevertheless, the Court "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (citations omitted).

To make out a prima facie case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish both "a statutory basis" for jurisdiction and that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-cv-01568(JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General personal jurisdiction subjects a defendant to suits on all claims. *Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction subjects a defendant to suits on only claims that arise from the defendant's conduct in the forum. *Cortlandt*, 2015 WL 5091170, at *2; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

**B. Discussion**

Christian bases his claim that this Court has personal jurisdiction over the Foundation solely on specific jurisdiction.[3] In particular, he argues that the Court has specific jurisdiction over the Foundation under C.P.L.R. § 302(a)(1), the provision of the New York long-arm statute that allows a Court to exercise jurisdiction over a foreign defendant who "transacts any business within the state" where the cause of action arises from that transaction. Christian further argues that this exercise of jurisdiction is consistent with due process. The Court, therefore, has no occasion to address the question of general jurisdiction or other potential theories of specific jurisdiction under New York's long arm statute.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Barrett v. Tema Development (1988), Inc.*, 251 Fed. App'x 698, 700 (2d Cir. 2007) (internal citation omitted). "New York courts define transact[ing] business as purposeful activity—some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

The Court's primary consideration under § 302(a)(1) is "[t]he quality of the defendants' New York contacts." *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007). In a proper case, a single act within New York can satisfy § 302(a)(1); where that is not so, "an ongoing course of conduct or relationship in the state may." *Licci*, 673 F.3d at 62. In making the § 302(a)(1) determination, courts take a holistic, totality of the circumstances approach. *See, e.g., id.*; *Bank*

---

[3] To the extent that the Complaint suggests the possibility that this Court has general jurisdiction over the Foundation, *see* Compl. at 2–3, the Complaint does not allege facts sufficient to so establish, and, in his brief in opposition, Christian did not defend or support that claim. The Court therefore treats any claim of general jurisdiction as forfeited.

7

*Brussels Lambert*, 171 F.3d at 787; *Farkas v. Farkas*, 36 A.D.3d 852, 853 (N.Y. App. Div. 2007).

The Second Circuit has identified a non-exhaustive list of four factors to guide the § 302(a)(1) inquiry in cases involving a contractual relationship. They are: (1) whether the contract at issue requires parties "to send notices and payments into [New York] or subjects them to supervision" there, (2) whether the contract was negotiated and executed in New York, (3) whether the contract had a New York or some of other choice of law provision, and (4) whether the defendant has "an on-going contractual relationship with a New York corporation." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

These indicia of personal jurisdiction are all but entirely absent here. Christian has not alleged that the 2009 Agreement required the Foundation to send notices or payments into New York, or that the Foundation be subject to supervision there. Nor has Christian alleged that the 2009 Agreement was negotiated or executed in New York.[4] The first two factors identified in *Sunward Electronics*, thus, cannot establish specific jurisdiction.

The third factor—choice of law—also does not support a finding of specific jurisdiction. The 2009 Agreement does not contain a choice of law clause. The Foundation, however, goes further, and argues that the 2010 Agreement's choice of German law provision governs this

---

[4] To be sure, in today's age of electronic communications—including by phone, email, instant messaging, and videoconference—the weight once given in the § 302(a)(1) inquiry to whether a contract was negotiated or executed while the defendant was physically in New York appears diminished. *See, e.g., Agency Rent A Car*, 98 F.3d at 30; *Fischbarg*, 880 N.E.2d at 27–28; *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 850 N.E.2d 1140, 1142–43 (N.Y. 2006). *But see, e.g., Penn Grp., LLC v. Slater*, No. 07 CIV. 729 MHD, 2007 WL 2020099, at *10 (S.D.N.Y. June 13, 2007); *Wilson v. Dantas*, 128 A.D.3d 176, 183 (N.Y. App. Div. 2015). Nonetheless, this factor remains relevant—and it does not support a finding of personal jurisdiction here.

litigation, affirmatively disfavoring a finding of personal jurisdiction over it in New York. As noted, the 2010 Agreement provides in § 15.5 that "[t]he agreement between the Hinrichsen Foundation, Martha and Henry Hinrichsen and Peters Edition Ltd, London dated November 17, 2009 remains in principle in place unless this agreement deviates from it; in this case the provisions of this agreement shall prevail." 2010 Agreement § 15.5. The Foundation argues that the German choice of law provision supersedes the 2009 Agreement's silence on choice of law, and that, pursuant to § 15.5, the 2010 Agreement controls.

On this discrete issue, the Court holds with Christian. The 2010 Agreement does conflict with its predecessor as to matters not relevant here. But, as to the choice of law provision, there is no conflict. The 2010 Agreement narrowly defines the matters to which German law applies: "German law shall apply to *this agreement* and its interpretation." *See* 2010 Agreement § 15.1 (emphasis added). Merriam-Webster defines "this" as "the one nearer or more immediately under observation or discussion."[5] The choice of law provision thus plainly refers to the 2010 Agreement and that agreement alone. Had the drafters of the 2010 Agreement intended the choice of law provision to apply more broadly, such as to an earlier agreement, they well knew how, as indicated by § 15.5's explicit reference to the 2009 Agreement. And, as a matter of grammar and logic, the term "this agreement" cannot coherently be read to refer to multiple agreements or to tacitly incorporate the 2009 Agreement.[6] The 2010 Agreement's choice of law

---

[5] *See* This, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/this, (accessed December 29, 2017).

[6] On the Foundation's construction, in which "this agreement" referred to both the 2009 and 2010 agreements, section 15.5 would effectively read: "[t]he agreement between the Hinrichsen Foundation, Martha and Henry Hinrichsen and Peters Edition Ltd, London dated November 17, 2009 remains in principle in place unless the *2010 and 2009 Agreements* deviates from it; in this case the provisions of the *2010 and 2009 Agreements* shall prevail." That reading is not coherent.

9

provision does not control the interpretation of the 2009 Agreement, the document on which Christian bases this lawsuit. The third factor thus neither supports nor disfavors a finding of specific jurisdiction.[7]

This leaves the fourth factor: an ongoing contractual relationship with a New York entity. Construing his complaint generously, Christian, as to this factor, relies on two principal facts as supporting New York jurisdiction: that (1) in August 2010, Henry and Martha sold Peters New York to Newco, which would become Peters KG, and in which the Foundation holds a majority interest, and (2) there was a consulting relationship between Henry, Martha, and Peters New York (or its successor in interest). But whether viewed separately or together, neither fact is sufficient to establish personal jurisdiction.

To be sure, there is technically an ongoing relationship between the Foundation and Peters New York that is based in contract. While Peters New York is not a signatory to the 2009 Agreement, that agreement did establish a contractual connection between it and the Foundation, in that, pursuant to the 2009 Agreement, the Foundation owns a majority stake in Peters KG, which in turn owns Peters New York. On the basis of the parties' cognizable submissions on this motion, this relationship is ongoing.

But that is all there is to the relationship between the Foundation and Peters New York, the only New York entity in this saga. And, as the case law instructs, the focus of the specific jurisdiction inquiry is on the quality of the New York contacts, not on their mere existence. *See*

---

[7] The Court notes that a different agreement involving substantially the same parties—the 2010 Consulting Agreement, which addressed the consulting relationship involving Peters New York—is by its terms governed by New York law. That each of the two 2010 agreements specified that the law of a given jurisdiction (as to one, Germany; as to the other, New York) governed, whereas the 2009 Agreement was silent as to choice of law, reinforces that the absence of a choice of law provision in the 2009 Agreement was a deliberate choice.

*Fischbarg*, 880 N.E.2d at 26–27. Here, considering the totality of the circumstances, the quality of this New York contact—which amounts to the fact of a passive and indirect ownership interest —is low. In contrast, the ongoing contractual relationships with New York entities that tend to be held as establishing personal jurisdiction under § 302(a)(1), involve active relationships, and repeated interactions, with New York entities or individuals. *See, e.g.*, *Sunward Elecs.*, 362 F.3d at 21–23; *Fischbarg*, 880 N.E.2d at 27–29. In *Sunward Electronics*, for example, the defendants had an active dealership agreement with a New York corporation. They purchased thousands of dollars' worth of systems from that corporation, traveled to New York on two occasions to attend training sessions, and were subject to the corporation's supervision. *Sunward Elecs.*, 362 F.3d at 23. Similarly, in *Fischbarg*, the defendants solicited the services of a New York attorney, contracted with that attorney, and "communicated regularly with him in the state." *Fischbarg*, 880 N.E.2d at 27.

There is no analogue here. There is no record evidence, and Christian has not claimed, that the Foundation ever once interacted with Peters New York. Christian does not allege, for example, that the Foundation or any representative ever negotiated with Peters New York, communicated with Peters New York, visited Peters New York, or solicited the inclusion of Peters New York in the merger. The Foundation's relationship with Peters New York arose out of a single contract and is attenuated. The Foundation does not directly own any interest in Peters New York itself; rather, pursuant to the 2010 Agreement, which implemented the 2009 Agreement, the Foundation is a limited partner in Peters KG, which itself owns Peters New York. And, while limited partners have some powers under the 2010 (and subsequent 2011) Agreements, there is no evidence that, to the extent it ever exercised those powers, the Foundation either transacted business with Peters New York or even interacted it with it. This

11

case thus is on par with cases where courts have declined to find personal jurisdiction based solely on low-quality ongoing business relationships. *See, e.g.*, *Cont'l Indus. Grp., Inc. v. Equate Petrochemical Co.*, 586 F. App'x 768, 770 (2d Cir. 2014) (ongoing business relationship pertained only to New York company's distribution of products in foreign market); *Woods v. Pettine*, No. 13 CIV. 290 PGG, 2014 WL 292363, at *7–8 (S.D.N.Y. Jan. 27, 2014) (ongoing business relationship arose out of single contract). This Court similarly cannot find personal jurisdiction here on the basis of the fourth *Sunward Electronics* factor.

In contrast, the consulting relationships that Henry and Christian each had with Peters entailed more substantial New York contacts. These relationships contemplated repeated communication and repeated performance, a good portion of which, drawing reasonable inferences in favor of Christian, may have occurred in New York. But those consulting arrangements do not involve the Foundation, the defendant here. That the 2009 Agreement separately provided for those relationships does not create the necessary New York contacts with the Foundation.

The 2009 Agreement, at its heart, describes a predominantly international transaction, with participating entities and persons drawn from London and Germany and just one, Peters New York, hailing from New York. The defendant here, the Foundation, is a London resident with no nexus of its own to New York. And the 2010 Agreement, which effectuates the merger initially contemplated in the 2009 Agreement and is properly considered as context on this Rule 12(b)(2) motion,[8] underscores the transaction's ties to non-New York fora. It creates a new

---

[8] *See, e.g., Wilson v. Dantas*, 128 A.D.3d 176, 183 (N.Y. App. Div. 2015), *aff'd*, 29 N.Y.3d 1051, 80 N.E.3d 1032 (2017) (considering, on motion to dismiss for lack of personal jurisdiction, not only the shareholder agreement at issue, but also associated agreements).

12

German company and provides for disputes under it to be resolved pursuant to a German forum selection clause and under German law.

In arguing that there is personal jurisdiction over the Foundation, Christian relies on two cases, but neither is apposite.

In *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161 (2d Cir. 2015), the Second Circuit found specific jurisdiction over a defendant law firm based on its having "mail[ed] one debt collection notice to Eades, engag[ed] in one debt collection phone call with Eades, and mail[ed] a summons and complaint to both Plaintiffs." *Id.* at 168. The Circuit relied not on a finding that the defendant had an ongoing business relationship involving New York, but instead on the fact that "negotiating debt collections constituted 'a major aspect of [the defendant's] mission—part of its principal reason for being.'" *Id.* (quoting *Deutsche Bank*, 850 N.E.2d at 1143 (N.Y. 2006)).

In *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988), the New York Court of Appeals found specific jurisdiction based on defendants' agency-like relationship with a New York entity, under a C.P.L.R. provision providing for personal jurisdiction based on transactions in New York through an agent. *See id.* at 44, 47–48; *see also* C.P.L.R. § 302(A)(1) ("As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or *through an agent* . . . transacts any business.") (emphasis added). The Court of Appeals noted that, to establish personal jurisdiction, a party need not "establish a formal agency relationship" between the defendant and a New York entity. *Id.* at 44. Rather, the court held, so long as a New York entity "engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [defendants] and that they exercised some control over

[the New York entity] in the matter," those activities could be attributed to the defendants for purposes of personal jurisdiction. *Id.*; *see also Cont'l Indus.*, 586 F. App'x at 770 (citing *Kruetter*).

*Eades* and *Kruetter*, however, are readily distinguished. Unlike in *Eades*, there is no evidence or allegation that the Foundation ever reached into New York, let alone that doing so was a major aspect of its mission, as was the case with the law firm defendant at issue in *Eades*. Indeed, Christian has alleged nothing about the Foundation's mission. And the declaration of Timothy Berg, which the Foundation submitted in support of its motion to dismiss and which does describe that mission, does not avail Christian's cause on the Rule 12(b)(2) motion. Berg represents that the Foundation's mission is to "ensure the continued support of contemporary music," which it achieves by distributing grants that "subsidize the public performance of works by living composers" and funding "scholarships at academic institutions." Berg Decl. at 1–2. On the facts alleged, the Foundation's sole link to New York, its passive ownership in Peters New York, has no connection to this mission.

As to *Kruetter*, it is distinguishable for want of a comparable agency relationship here to the one at issue there. Indeed, there is no claim that, as of the merger agreement, the Foundation and Peters New York had any relationship. Peters New York therefore was not an agent (even informally) of the Foundation in connection with the execution of the merger agreement itself. And there is no allegation of the critical element of an agency-like relationship between these two entities: control. Christian does not allege, for example, that the Foundation controls or ever controlled the regular activities of Peters KG, let alone its New York-based subsidiary. And "a mere ownership interest in a corporation over which New York has personal jurisdiction, without more, is insufficient to confer jurisdiction over an individual." *Ivy Mar Co. v. C.R. Seasons*,

14

*Ltd.*, No. 95 CV 0508 (FB), 1997 WL 37082, at *7 (E.D.N.Y. Jan. 24, 1997) (citing *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 929 (S.D.N.Y. 1990); and *Ferrante Equipment Co. v. Lasker–Goldman Corp.*, 258 N.E.2d 202, 204–05 (N.Y. 1970)).[9]

For the reasons above, Christian has not made the necessary showing that the Foundation "transacted business in New York," so as to support the first prong of the New York long-arm statute.[10]

In light of this holding, the Court has no occasion to consider whether the exercise of personal jurisdiction over the Foundation would comport with federal due process. *See Karpov v. Karpov*, No. 12 CIV. 3649 PAE, 2012 WL 5233565, at *3 (S.D.N.Y. Oct. 23, 2012). The Court also has no occasion to consider the Foundation's alternative grounds for dismissal, based on forum *non conveniens*, and failure to state a claim.

---

[9] Henry's and Martha's sale of Peters New York and their actions undertaken pursuant to their consulting agreements cannot be imputed to the Foundation, either. There is no allegation that they ever acted as the Foundation's agents. On the contrary, in negotiating and entering into the 2009 Agreement, they were counterparties to—negotiating adversaries with—the Foundation. And there is no allegation that, following the entry of that 2009 Agreement, the Foundation ever gained any control over Henry and Martha.

[10] Although the Court need not resolve this issue in light of its holding as to the first prong, it appears that, had the first prong been established, Christian would likely have satisfied the second, "arising from," prong of C.P.L.R. § 302(A)(1), under which there must be an "'articulable nexus' . . . or 'substantial relationship' . . . between the business transaction and the claim asserted." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 11 (N.Y. 2016) (quoting *Licci v. Lebanese Can. Bank, SAL*, 984 N.E.2d 893, 900 (N.Y. 2012)). "This inquiry is relatively permissive and does not require causation, but merely a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.* (citations and quotations omitted). "The claim need only be in some way arguably connected to the transaction." *Id.* (citations and quotations omitted). Here, if one assumes that the Foundation had transacted business in New York in connection with the 2009 Agreement, the breach of that agreement (the failure to transfer 5 percent equity in Peters KG to Christian) would fairly be claimed to arise from that transaction.

## CONCLUSION

For the reasons set out above, Christian has failed to establish, under the standards governing Rule 12(b)(2) motions made at this stage of litigation, that this Court has personal jurisdiction over the Foundation. The Court therefore dismisses this case. The dismissal is, however, without prejudice to Christian's right to file another lawsuit, in any forum, making similar claims against the Foundation, provided that he can then plead facts sufficient to support a finding of personal jurisdiction.

The Clerk of the Court is respectfully directed to close the motion pending at Dkt. 8, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 9, 2018
       New York, New York